# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. CENTRAL STATES REPROCESSING, LLC, an Idaho limited liability company, and<br>2. CSR WORLDWIDE, OK., INC., an Oklahoma corporation,<br><br>*Plaintiffs*,<br><br>v.<br><br>1. OLDCASTLE APG, INC., a Delaware corporation,<br>2. MOISTURESHIELD, INC., a Delaware corporation,<br>3. PPL ACQUISITION GROUP VII, LLC, a Delaware limited liability company,<br>4. PPL GROUP, LLC, an Illinois limited liability company,<br>5. AARON EQUIPMENT COMPANY, an Illinois corporation, and<br>6. WILLIAM HASSELL,[1] an individual domiciled in Arkansas,<br><br>*Defendants*, | Case No. CIV-20-474-RAW<br><br>Removal from the District Court of Adair County, Oklahoma, Case No. CJ-2020-56 |

## **ORDER**[2]

This action was filed in the District Court in and for Adair County, Oklahoma on November 13, 2020, and removed to this court by Aaron Equipment Company on December 17, 2020, thirty days after it filed a waiver of summons.

---

[1] This Defendant informs the court that he has been incorrectly named in this case as William Hassles. *Docket No. 99, at 1*. The court will, therefore, refer to him by his correct name, William Hassell. The Court Clerk is directed to correct the name on the docket sheet.

[2] For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

Plaintiffs, Central States Reprocessing, LLC (hereinafter "**Central States**") and it local affiliate CSR Worldwide, OK, Inc. (hereinafter "**CSR Worldwide**"), filed their First Amended Complaint on November 29, 2021, against Oldcastle APG, Inc. (hereinafter "**Oldcastle APG**"), its subsidiary MoistureShield, Inc. (hereinafter "**MoistureShield**"), PPL Acquisition Group VII, LLC (hereinafter "**PPL VII**"), PPL Group, LLC (hereinafter "**PPL Group**")(PPL VII and PPL Group hereinafter jointly "**PPL Defendants**"), Aaron Equipment Company (hereinafter "**Aaron Equipment**"), and William Hassell (hereinafter "**Hassell**"). The court will also hereinafter jointly refer to Oldcastle APG and MoistureShield as "**Sellers**," and the PPL Defendants and Aaron Equipment as "**Auctioneers**."

The case arises from CSR Worldwide's purchase of a recycling facility located in Watts, Oklahoma from Oldcastle APG; Central States' purchase of certain recycling equipment within that facility from MoistureShield through an online auction facilitated by the Auctioneers; and the subsequent removal by Hassell, an employee of MoistureShield, of the programmable logic controllers (hereinafter "PLCs") which act as the "brains" of the recycling equipment and without which the equipment will not function. Hassell cut hundreds of wires connecting the PLCs to the recycling equipment and unbolted and removed the PLCs from the control panels. Plaintiff's contractor estimated the repair would cost approximately $600,000.

Plaintiffs allege the following ten causes of action:

1. A. Breach of the contract for sale of equipment against the Auctioneers.

    B. Breach of the real estate purchase agreement against the Sellers.

2. Breach of warranty of description against the Auctioneers.

3. Breach of warranty of fitness for a particular purpose against the Auctioneers.

4. Breach of warranty in deed against the Sellers.

2

5. Common fraud against all Defendants.

6. Constructive fraud against all Defendants.

7. Fraudulent inducement against all Defendants.[3]

8. Tortious interference with contract against Hassell and the Sellers.

9. Negligence against the Auctioneers.

10. Negligent injury to property against MoistureShield, PPL Group, and Aaron Equipment.

Now before the court are motions for summary judgment filed by the Sellers [Docket No. 78][4], Aaron Equipment [Docket No. 79][5], Hassell [Docket No. 80][6], and PPL Defendants [Docket No. 81][7].

I. **Standard of Review**

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws "reasonable inferences therefrom in the light most favorable to the nonmoving party." *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir.

---

[3] While the court does not believe Plaintiffs intend this claim to include Hassell, Plaintiffs simply reference Defendants.
[4] The response to Docket No. 78 is at Docket No. 92; the reply at Docket No. 100.
[5] The response to Docket No. 79 is at Docket No. 90; the reply at Docket No. 95.
[6] The response to Docket No. 80 is at Docket No. 93; the reply at Docket No. 99.
[7] The response to Docket No. 81 is at Docket No. 91; the reply at Docket No. 96.

2006) (citation omitted).  At this stage, however, a plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of the allegations.  *Id.*

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

While at the summary judgment stage evidence need not be submitted in a form that would be admissible at trial, the substance of the evidence must be admissible.  For example, the court disregards "inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form." *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (emphasis in original).  "[A]ffidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).  Similarly, "[t]estimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004).

**II.     Hassell**

In their response to Hassell's motion, Plaintiffs agree that they did not intend to bring claims against Hassell for common fraud, constructive fraud, and fraudulent inducement. Hassell's motion, therefore, is granted as to those claims.

Plaintiffs state that the only claim they intended to bring against Hassell is for tortious interference with contract. To prevail on a claim for tortious interference with contract, a plaintiff must show: "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1165 (Okla. 2009). A claim for tortious interference with contract will not stand against a party to the contract or a person or entity acting as an agent or representative for a party to the contract. *See Violes v. Santa Fe Minerals, Inc.* 911 P.2d 1205, 1210 (Okla. 1996).

Plaintiffs allege that Hassell, an employee of MoistureShield, tortiously interfered with the contract between Plaintiff Central States and the Auctioneers for the purchase of MoistureSheild's recycling equipment. The contract to which Plaintiffs refer is the "Group Auction Invoice" issued by PPL Group to Central States. *Docket No. 93-13*. Hassell argues that the lawsuit against him fails as a matter of law because MoistureShield was a party to the contract for the sale of its equipment, and Hassell was acting as MoistureShield's employee when he removed the PLCs from the facility.

The first question then is whether MoistureShield was a party to the contract for the sale of the recycling equipment. Plaintiffs contend it was not. Hassell argues that MoistureShield, as owner of the equipment, was a party to that agreement.

The Guarantee Auction Agreement refers to MoistureShield as the "Owner." *Docket No. 93-1*. It refers to PPL VII and Aaron Equipment jointly as "Auctioneer." *Id*. It provides for the "guarantee auction sale of the assets" listed in an attached exhibit and located at the Watts recycling facility. *Id*. The agreement appears to be for the services of the "Auctioneer" to sell the goods of the "Owner."

Both Oklahoma and Illinois[8] have adopted the Uniform Commercial Code, including § 2-328. 12A OKLA. STAT. § 2-328; 810 ILL. COMP. STAT. § 5/2-328. A treatise on that section of the U.C.C. provides:

> As a general rule, an auctioneer is the seller's agent and the relationship is governed by the ordinary principles of agency law. The auctioneer is not the buyer with respect to the original seller, nor the seller with respect to the ultimate buyer.
>
> As an aspect of the auctioneer's status as an agent, the auctioneer may hold the status of a partially disclosed agent or an agent with a fully disclosed principal. In the latter case, the auction sales contract is the contract between the buyer and the auctioneer's principal. In contrast, when the identity of the auctioneer's principal is not fully disclosed, the auctioneer may be held liable as the other party to the contract.

3A Laurence's Anderson on the Uniform Commercial Code § 2-328:22 (3d. ed.). The court need not delve into Oklahoma or Illinois law on the subject or the facts with regard to disclosure of MoistureShield as the principal, however, as Plaintiffs shed light on a genuine issue of material fact with their next contention.

Plaintiffs argue that MoistureShield specifically conveyed ownership of the recycling equipment to PPL VII and Aaron Equipment prior to the sale of that equipment to Central States. Plaintiffs cite sections 1(a)-(b) and 8(b) of the Guarantee Auction Agreement referencing a bill

---

[8] While the parties do not mention it, the Guarantee Auction Agreement has a choice of law provision stating that "disputes hereunder shall be governed by and construed in accordance with the laws of the State of Illinois." *Docket No. 93-1 at 5*. Of course, the disputes herein include several other agreements, as well as parties other than the parties to the Guarantee Auction Agreement, but that agreement is to be construed in accordance with Illinois law.

of sale and conveyance of the goods to PPL VII and Aaron Equipment free and clear of all encumbrances, *Docket No. 93-1* at 1 and 3; the deposition testimony of Joel Bersch, the Executive Vice President of the PPL Defendants, stating that PPL VII paid $405,000 to MoistureShield prior to the date of the auction and that MoistureShield then sent over a bill of sale, *Docket No. 93-2 at 2-3*; the deposition testimony of Chris Turner, MoistureShield's Vice President of Operations stating his belief that MoistureShield did not have title to the equipment thereafter, *Docket No. 93-4 at 2-3*; and a Bill of Sale between MoistureShield and PPL VII and Aaron Equipment, *Docket No. 93-3*.  The Bill of Sale includes signature by MoistureShield's representative only, but it appears that there was at least the intent that MoistureShield would convey ownership to the PPL VII and Aaron Equipment prior to the auction of the recycling equipment.  Whether that occurred is a genuine issue of material fact.

MoistureShield cites deposition testimony of Joel Bersch and argues that the Bill of Sale was never fully executed and that reference to it on the first page of the Guarantee Auction Agreement was mistakenly included due to an oversight.  *Docket No. 99 at 4*.  Still, whether MoistureShield had ownership of the recycling equipment at the time of the sale and whether MoistureShield was a party to any contract for the sale of that equipment is a genuine issue of material fact.

The next question then is whether Hassell was acting as MoistureShield's employee when he removed the PLCs from the facility because even if MoistureShield was a party to the contract for the sale of the equipment, if Hassell acted in good faith on behalf of MoistureShield as its agent or employee, he cannot be held liable for tortious interference.  As noted above, generally, "an agent of a principal cannot be held liable for interfering with a contract between the principal and a third party."  *Grillot v. Oklahoma ex rel. Univ. of Okla. Bd. of Regents*, 2019 WL 3558183,

7

at *3 (W.D. Okla. Aug. 5, 2019) (citing *Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998)). If, however, "an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer," the employee may be held liable for tortious interference. *Martin*, 975 P.2d at 896-97. To be liable, generally an employee must have acted so contrary to the employer's interests that he could only have been motivated by his own personal interests. *See id*.

It is undisputed that Hassell was employed by MoistureShield when he removed the PLCs. *Docket No. 93 at 7*. Plaintiffs argue, however, that Hassell acted at the request and on behalf of Doug Brooks, the Operations Manager of Oldcastle APG, when he removed the PLCs. The court is not convinced. There is no evidence here that Hassell acted contrary to the interests of his employer or in his own personal interests. In fact, in their response to Hassell's motion, Plaintiff's acknowledge that Hassell "removed the PLCs at the request of his supervisor, and APG Operations Manager, Doug Brooks." *Docket No. 93 at 7*. Regardless of Doug Brooks' involvement, by Plaintiffs' own admission, Hassell *acted at the direction of his supervisor*. There is no evidence that Hassell acted in bad faith or outside the scope of his employment with MoistureShield when he removed the PLCs. Hassell's motion for summary judgment is hereby granted.

### III.    MoistureShield & Oldcastle APG

Plaintiffs brought claims against the Sellers for breach of the real estate purchase agreement, breach of warranty in deed, common fraud, constructive fraud, fraudulent inducement, tortious interference, and negligent injury to property. Sellers move for summary judgment on all claims.

1. **Tortious Interference**

The court takes this claim out of turn, as it already addressed it above. Sellers argue that the tortious interference claims against them fail because the Auctioneers "did not own the auction items" and were "working on behalf of MoistureShield and Oldcastle to sell the designated auction assets." *Docket No. 78 at 26-27*. Plaintiffs argue that the Auctioneers were the owners of the equipment purchased by Central States and that Hassell removed the PLCs at the instruction of Oldcastle APG *while "acting in his capacity as an employee of MoistureShield." Docket No. 92 at 23* (emphasis added in reference to Hassell's motion above). For the reasons stated above – there being genuine issues of fact with regard to MoistureShield's ownership of the recycling equipment at the time of the auction and whether MoistureShield was a party to the contract for the sale of that equipment to Plaintiffs – the motion is denied.

2. **Breach of the Real Estate Purchase Agreement**

To establish a claim for breach of contract, Plaintiffs must show "(1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748-49 (Okla. 2021). Plaintiffs bring this claim against both Oldcastle APG and MoistureShield, referencing the Purchase and Sale Agreement (hereinafter "PSA") for the recycling plant. As Sellers argue and Plaintiffs concede, however, neither MoistureShield nor Central States were parties to the PSA. *Docket No. 92 at 16; Docket No. 92-6*. The motion is granted on this claim as to these parties. Remaining is the breach of the PSA claim by CSR Worldwide against Oldcastle APG.

In their First Amended Complaint, Plaintiffs allege breach of the PSA against Oldcastle APG for "failure to remove the personal property not included in the sale as agreed upon." Plaintiffs argue in their response to the summary judgment motion that Oldcastle APG breached

9

the PSA in numerous ways. Given the age of this case and the stage of litigation, the court will not allow Plaintiffs to now effectively amend the complaint to include other *acts* not alleged in the First Amended Complaint, such as the failure to provide CSR Worldwide with two days-notice prior to accessing the property. Plaintiffs' entire case, however, is based on the removal and destruction of property at the direction of the Sellers. While it was not abundantly clear in the First Amended Complaint, it was entirely foreseeable that Plaintiffs intended the breach of the PSA claim against Oldcastle APG to include liability for the removal of the PLCs or at least for the destruction and/or removal of the wiring connecting the PLCs as "fixtures or building equipment" conveyed by the PSA.

Ultimately, Oldcastle APG argues that it is entitled to summary judgment on the breach of the PSA claim because the PSA limits damages in Sections 9.01 and 14.04(b). Oldcastle APG argues that any liability is capped at the total purchase price paid, which was $800,000.00. Even if these clauses are enforceable, and Plaintiffs contend they are not, they go to damages, not liability for breach of contract. There are genuine issues of material fact as to whether Oldcastle breached the PSA by failing to remove its personal property as agreed or by directing the removal and/or destruction of fixtures or building equipment purchased by CSR Worldwide. The motion by Oldcastle APG against CSR Worldwide is denied.

### 3. Breach of Warranty in Deed

The parties agree that "[t]o recover on a theory of breach of warranty a party must show that a warranty exists, the warranty was breached, and that the breach was the proximate cause of the loss suffered." *Collins Radio Co. of Dallas, Tex. v. Bell*, 623 P.2d 1039, 1052 (Okla. Civ. App. 1980). Plaintiffs bring this claim against both Oldcastle APG and MoistureShield, referencing the PSA and the warranty deed.

As seemingly agreed by the parties in the briefing, and certainly argued by Sellers, *Docket No. 78 at 9*, Oldcastle APG owned the recycling plant, and MoistureShield owned the recycling equipment. Oldcastle APG sold the recycling plant to CSR Worldwide. *Id*. MoistureShield sold the recycling equipment via the Auctioneers[9] to Central States. *Id*.

Yet Sellers point to the Warranty Deed identifying *MoistureShield* as the seller of the recycling plant. *Docket No. 78-3*. Sellers then argue that Oldcastle APG and Central States were not parties to the Warranty Deed, and thus the motion should be granted on this claim as to these parties. Sellers further argue that Plaintiffs cannot show that *MoistureShield* failed to convey an indefeasible estate in fee simple of the real property. This is all quite perplexing. It is unclear at this point whether Oldcastle APG or MoistureShield owned the real property and/or whether they are simply trying to play "hide the ball." Oldcastle APG is the party "Seller" to the PSA, and MoistureShield is the party "grant[ing], bargain[ing], sell[ing] and convey[ing] the real property in the Warranty Deed. As there are genuine issues of material fact aplenty, the motion is denied.

### 4. Fraud Claims

Plaintiffs allege claims for common fraud, constructive fraud, and fraudulent inducement against the Sellers. To constitute actual or common law fraud, "there must be an intentional deception." *Sutton v. David Stanley Chevrolet, Inc.*, 475 P.3d 847, 853 (Okla. 2020) (citation omitted). A claim for fraudulent inducement includes "all the elements of common law fraud." *Oak Tree Partners, LLC v. Williams*, 458 P.3d 626, 646 (Okla. Civ. App. 2018). "These are: (1)

---

[9] Of course, as noted above, the parties disagree as to whether the Auctioneers acted as agents for MoistureShield or purchased the equipment from MoistureShield to sell in auction, and genuine issues of material fact exist as to this issue.

11

a material misrepresentation; (2) known to be false at the time made; (3) made with specific intent that a party would rely on it; and (4) reliance and resulting damage." *Id*. (citation omitted).

"[C]onstructive fraud does not require an intent to deceive." *Sutton*, 475 P.3d at 853 (citation omitted). Constructive fraud "is a breach of either a legal or equitable duty and does not necessarily involve any moral guilt, intent to deceive or actual dishonesty of purpose." *Id*. (citation omitted). It does, however, have "the very same legal consequences as actual fraud." *Id*. (citation omitted).

Plaintiffs' claims are based on their alleged reliance on the operability of the recycling plant and recycling equipment when Plaintiffs purchased them via the PSA and the auction. Plaintiffs allege that had they known Sellers would remove the PLCs rendering the plant and equipment inoperable without significant cost and repair, they would not have purchased either. It is undisputed that the PLCs were removed after Plaintiffs toured the recycling facility and agreed to purchase the recycling plant and the recycling equipment "as is." The questions of whether Sellers made any fraudulent representations and if so, whether they did so intentionally or not are genuine issues of material fact. The motion is denied.

**5. Negligent Injury to Property**

Plaintiffs bring a claim for negligent injury to property against MoistureShield based on the removal of the PLCs. As cited by Plaintiffs: "To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) [t]he existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure." *Atchison, T. & S. F. Ry. Co. v. Howard*, 98 P.2d 914, 917 (Okla. 1939) (citation omitted). As Plaintiffs also note,

citing *Woods Petroleum Corp v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023, 1029 (Okla. Civ. App. 1983), the same elements are applicable to a claim for negligent injury to property.

Sellers argue that summary judgment should be granted on this claim because Hassell removed the PLCs on June 18 and 29, 2020, before the invoice was paid on July 17, 2020, and thus before title passed from MoistureShield to Central States. Plaintiffs, however, submitted evidence that Hassell removed the PLCs on July 23, 2020, after the invoice was paid. *Docket No. 92-8 at 4 and Docket No. 92-9 at 14*. Plaintiffs further argue that title to the equipment passed to Central States under Oklahoma's Uniform Commercial Code on June 2, 2020. In either event, genuine issues of material fact exist. The motion is denied.

## IV.   PPL Defendants & Aaron Equipment

Plaintiffs bring claims against the Auctioneers for breach of the contract for sale of equipment, breach of warranty of description, breach of warranty of fitness for a particular purpose, common fraud, constructive fraud, fraudulent inducement, negligence, and negligent injury to property. Auctioneers move for summary judgment on all claims. The court notes that Plaintiffs' claims against the Auctioneers relate to Central States' purchase of the recycling equipment only, and not to CSR Worldwide. The motions are granted as to any claims by CSR Worldwide.

### 1. Breach of Contract

To establish a claim for breach of contract, Plaintiffs must show "(1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach." *Morgan*, 488 P.3d at 748-49. Plaintiffs bring this claim against the Auctioneers based on the representations

13

made about the recycling equipment Plaintiffs purchased in the auction sale and the subsequent removal of the PLCs rendering much of that equipment inoperable.

Aaron Equipment argues that it is not an auctioneer, that it simply referred MoistureShield to the PPL Defendants, and that it was not a party to any agreement or contract with Plaintiffs. Aaron Equipment points out that it was not listed anywhere on the Invoice generated by the PPL Group for the auction items purchased by Central States and argues that there was no contract between Plaintiffs and Aaron Equipment.

Plaintiffs point to the Auction Buyer's Guide issued by PPL Group and Aaron Equipment, as well as the Guarantee Auction Agreement between MoistureShield, PPL VII, and Aaron Equipment. *Docket Nos. 90-16 and 90-5*. Plaintiffs also include emails between Plaintiffs and Aaron Equipment about the auction. *Docket No. 90-3*. Plaintiffs attach the Joint Venture Agreement between PPL VII and Aaron Equipment for the "joint disposition of property acquired in connection with the MoistureShield, Inc. AKA AERT Guarantee Auction Agreement transaction, dated April 13, 2020 as well as any related matters arising out of the same." *Docket No. 90-4 at 1*. Plaintiffs further include letters from Aaron Equipment's counsel confirming *inter alia* that the PLCs "are essential components of those machines, and were included in the items identified during the inspections that occurred after the execution of the Guarantee Auction Agreement." *Docket No. 90-14*. The court is not convinced by Aaron Equipment's argument that it was not a party to any oral or written contract. There are genuine issues of material fact.

The PPL Defendants argue that they were acting only as agents for MoistureShield. As discussed above, there are genuine issues of material fact. The PPL Defendants further argue that even if a contract existed between them and Central States, they did not breach the contract. They argue that Hassell's removal of the PLCs was an intervening, superseding act which

14

absolves them of any liability. The court is not persuaded that Hassell's removal was independent of any act or omission of the Auctioneers or that it was not reasonably foreseeable to the Auctioneers. Plaintiffs presented evidence that in fact William DiFulvio, the Auctioneers' onsite manager, allowed Hassell to enter the recycling plant and remove the PLCs. *Docket No. 90-18 at 4 and 90-19 at 2-5*. There are genuine issues of material fact. The motions by the Auctioneers are denied as to the breach of contract claims against them.

2. **Breach of Warranty of Description**

The Auctioneers argue that this claim is duplicative of the breach of contract claim and "should not be allowed to proceed to trial in the interest of judicial economy, fairness, and to prevent confusion during trial." Docket Nos. 95-at 6 and 96-at 6. Given the number of pages of duplicative briefing and argument submitted by Defendants in their four separate motions for summary judgment, it does not appear they are concerned with judicial economy. Moreover, as argued by Plaintiffs, "[e]ven in cases of blanket disclaimers of all warranties there remains a warranty of description," *Murray v. D&J Motor Co., Inc.*, 958 P.2d 823, 829 (Okla. Civ. App. 1998), and questions of fact as to whether the condition of the equipment received by Plaintiffs varied from its condition on the date of Plaintiff's pre-auction inspection of the lots preclude summary judgment. The motions are denied.

3. **Breach of Warranty for a Particular Purpose**

The parties agree that a warranty for fitness of a particular purpose exists only when: (1) the seller knows that the goods will be used for a "particular purpose" and (2) the buyer relies "on the skill or judgment of the seller in selecting suitable goods." *Crysco Oilfield Srvcs., Inc. v. Hutchison-Hayes Intern., Inc.*, 913 F.2d 850, 852 (10th Cir. 1990) (citation omitted). Plaintiffs argue that the record shows the Auctioneers were aware of the pending relationship between

Plaintiffs and MoistureShield to produce REPRO—a separate product from what the facility was originally used for—and used that information to entice Plaintiffs to increase their offer on the equipment. Auctioneers argue that Plaintiffs have not shown any evidence to demonstrate that Central States' representative Troy Burgess relied on the skill or judgment of anyone other than himself and/or his father in selecting the items and equipment. The court does not agree. Any expertise of Burgess and/or his father did not necessarily preclude him from also relying on the skill or judgment of the Auctioneers in selecting suitable goods. Genuine issues of material fact exist. The motions are denied.

### 4. Fraud Claims

In the First Amended Complaint, Plaintiffs allege claims for common fraud, constructive fraud, and fraudulent inducement against the Auctioneers. In their response to the Auctioneers' summary judgment motions, Plaintiffs concede that the record developed in discovery does not support the elements for actual fraud or fraudulent inducement against the Auctioneers. The motions, therefore, are granted as to those claims.

Remaining is the constructive fraud claim. "Constructive fraud may be defined as any breach of a duty which, regardless of the actor's intent, gains an advantage by misleading another to his prejudice." *Sutton*, 475 P.3d at 854 (citation omitted). "A fiduciary relationship requires full disclosure of material facts." *Id*. (citation omitted). "Where there is no fiduciary relationship a legal or equitable duty to disclose all material facts may arise out of the situation of the parties, the nature of the subject matter of the contract, or the particular circumstances surrounding the transaction." *Id*. (citation omitted).

Plaintiffs' state that the constructive fraud claims against the Auctioneers are based on the Auctioneers' failure to inform Plaintiffs that the PLCs were not included in the auction.

Plaintiffs, however, have not submitted any evidence that the Auctioneers intended the PLCs to be removed or had any knowledge that MoistureShield and/or Oldcastle APG intended to remove the PLCs. In fact, the only evidence available indicates that the Auctioneers were not aware of any plan to remove the PLCs. PPL Defendants' representative Joel Bersch testified that he expected the equipment to be delivered the way it was on the day of the inspection and that he did not "have any conversations with anyone from MoistureShield wherein the subject of the PLCs was ever discussed" before he learned of the claims of their removal. *Docket No. 96-1 at 5*. Aaron Equipment's representative Bennett Cohen testified that "we had no knowledge of anything being removed from the facility" and that he never had any discussions or communications with "any representative or agent of MoistureShield wherein they discussed removing electronic controllers or components from control panels after the auction." *Docket No. 95-8 at 3*.

In fact, by Plaintiffs' account and evidence, the PLCs were removed by Hassell at the direction of MoistureShield and Oldcastle APG after the purchase of the recycling equipment. There is no evidence that the Auctioneers failed to disclose any facts that were known to them or possibly even in existence at the time they sold the equipment. The motion for summary judgment, therefore, is granted as to this claim.

   5. **Negligence Claims**

Plaintiffs allege claims of negligence against the Auctioneers and negligent injury to property against PPL Group and Aaron Equipment. Again, the elements of negligence are: "(1) the existence of a duty on part of defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom." *Prince v. B.F. Ascher Co., Inc.*, 90 P.3d 1020, 1027 (Okla. Civ. App. 2004) (citation omitted). As to the first element, Aaron Equipment

argues that it owed no duty to Plaintiffs as it was not a party to any contract or transaction with Central States. As held above, there are genuine issues of material fact regarding whether Aaron Equipment was a party to any agreement with Central States.

The PPL Defendants also argue that Plaintiff has not identified any legal duty owed by them which was breached. "An auctioneer, as representing a class of agency, is considered an agent of both parties to the sale, and by virtue of the employment is agent only of the seller until the hammer falls." *Tulsa Auto Dealers Auction v. North Side State Bank*, 431 P.2d 408, 412 (Okla. 1966). Plaintiffs have alleged and presented evidence that after the hammer fell, William DiFulvio, the Auctioneers' onsite manager, allowed Hassell to enter the recycling plant and remove the PLCs. *Docket No. 90-18 at 4 and 90-19 at 2-5*. There are genuine issues of material fact; the motions are denied.

## V. **Damages**

Defendants seek to limit any damages Plaintiffs may recover, including *inter alia* punitive damages, arguing that there is no evidence that Defendants or their employees acted with conduct which illustrates malice and/or reckless disregard rising to the level of "evil intent." Should this case go to trial, the court will determine which damages issues may be submitted to the jury at the conclusion of the evidence.

## VI. **Summary**

As stated above, the motion for summary judgment by Hassell [Docket No. 80] is hereby granted.

The motion for summary judgment by MoistureShield and Oldcastle APG [Docket No. 78] is hereby moot in part and denied in part as stated above. As Central States and MoistureShield were not parties to the PSA, the motion is granted as to the breach of that contract by Central States and against MoistureShield. In all other respects, the motion is denied.

The motions for summary judgment by Aaron Equipment [Docket No. 79] and the PPL Defendants [Docket No. 81] are hereby granted in part and denied in part as stated above. They are granted as to claims by CSR Worldwide. They are granted as to the claims for actual fraud, constructive fraud, and fraudulent inducement. In all other respects, the motions are denied.

**IT IS SO ORDERED** this 30th day of May, 2023.

*/s/ Ronald A. White*

**THE HONORABLE RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**
**EASTERN DISTRICT OF OKLAHOMA**